PLOTKIN, Judge,
dissenting:
Because I believe that the evidence presented at the trial in this matter was insufficient to support the trial court’s find- *745 tag of guilt, I dissent from the majority opinion affirming the trial court judgment. Facts
Defendant was arrested by New Orleans Police Officers about 10:45 a.m. on Monday, August 29, 1988, in the 8500 block of Hickory Street in the City of New Orleans. He was charged with possession of 30 individually-packaged bags of crack cocaine placed in a larger plastic bag, which was recovered from the vacant lot where he was arrested. Although the defendant does not contest the fact that a narcotics violation was committed in the 8500 block of Hickory on that morning, he does contest his participation in the crime. He claims that the police officers who made the arrest misidentified him as the perpetrator of the crime.
At trial on the matter, the State presented the testimony of two of the three police officers involved in the arrest. In response, the defendant presented his own testimony, as well as the testimony of three other witnesses who all claim to have been present at the scene of the arrest. All the witnesses admit that someone was selling crack cocaine near the corner of Leonidas and Hickory streets on the morning of August 29, 1988. The police officers claim that Massey was selling the drugs, while all the defense witnesses claim that another man, Reginald Knight, was selling the drugs. Knight took the stand and admitted under oath that he was selling crack in the 8500 block of Hickory that morning and that the plastic bag filled with 30 individually-wrapped bags of crack recovered by police officers at the time of the arrest belonged to him. The trial court nevertheless found Massey guilty as charged. I disagree with that decision based on the reasons stated below.

Sufficiency of the Evidence

Three New Orleans Police Officers assigned to the Special Operations Division participated in Massey’s arrest. Officer Clinton Lauman testified that the officers were patrolling in the second district in a semi-marked police vehicle when they noticed Massey leaning into the passenger side window of a dark blue Grand Prix which was stopped in the middle of the 8500 block of Hickory. Lauman stated that Massey was holding a clear plastic bag in his left hand, and he appeared to be “picking out” of the bag with his right hand. When Massey saw the police car, Lauman said, he clenched his fist, turned, and started walking away toward a vacant lot at the corner of Leonidas and Hickory; the Grand Prix sped off. Massey then walked to a tree located a couple of feet from the sidewalk, where he discarded the plastic bag into some weeds at the base of the tree and began to unbutton and unzip his pants as though he was preparing to urinate on the tree, according to Lauman. Lauman stated that he and Officer John Delucca exited the police car at that point and approached Massey. Delucca allegedly told Massey that he was under investigation and informed him of his rights. Lau-man said that he retrieved the bag, then placed him under arrest.
Officer Lauman’s story was corroborated by Officer Delucca. The only inconsistency in the testimony given by the two officers is that Delucca stated on cross examination that they had already exited the police car when Massey discarded the bag by the tree. Lauman stated that there was no one else in the lot at the time of the arrest and Delucca said there was no one else on that side of the street. Both officers stated that they never lost sight of Massey from the time they first saw him leaning into the passenger window of the car and the time they arrested him.
The defense presented a very different story at trial. Massey claims that he was in the vacant lot at the corner of Leonidas and Hickory streets collecting scrap metal and cans dropped there by the patrons of the bar located across the street when the police arrived. Two eyewitnesses, Leroy Paul and Gregory Cushenberry, stated that another young man had been selling drugs near the corner at least since about 8:30 a.m. that morning; Massey arrived sometime around 10 or 10:30. When the police arrived, Paul and Cushenberry testified that the man who had been selling drugs started running across the vacant lot, drop *746 ping the bag of crack as he went. The true perpetrator of the crime, according to the eyewitnesses, squeezed through a crack in the fence and hid under a house, they said. Massey testified that he did not see the other man run through the lot because his back was turned, but that he heard him. Massey, Paul, and Cushenberry all testified that the police officers put Massey into the patrol car, then went back into the lot to search for the bag of drugs.
Reginald Knight, an 18-year-old with no arrests as an adult, testified for the defense, confessing that the crack cocaine in the bag recovered by the police at the time of Massey’s arrest belonged to him. Knight stated that he was on the corner “slinging” when someone warned him that the police were coming. He said that when he saw the police car turn the corner, he started running and dove under a house, dropping the bag on the way. Knight said that while the police were talking to Massey, he removed the red shirt he was wearing over his white T-shirt and walked away; the police never saw him. The trial judge thoroughly questioned Knight concerning the voluntary and knowing nature of his confession and warned him that he could face legal penalties if he elected to confess to the crime. Additionally, the judge insisted that Knight consult with an attorney from the Orleans Indigent Defender Program prior to his confession. Nonetheless, Knight chose to confess to the crime.
When reviewing for sufficiency of the evidence in a criminal case, Louisiana appellate courts follow the mandate of the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires that there be sufficient evidence to justify a rational trier of facts to find guilt beyond a reasonable doubt. State v. Mussall, 523 So.2d 1305, 1308 (La.1988). In Mussall, supra, the Louisiana Supreme Court set out the following guidelines for reviewing for sufficient evidence:
First, a review of a criminal conviction record for sufficiency of evidence does not require a court to “ ‘ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.’ ” Second, a reviewing court must consider the record through the eyes of a hypothetical rational trier of fact who interprets all of the evidence as favorably to the prosecution as any rational fact finder can. Third, the inquiry requires the reviewing court to ask whether such a hypothetical rational trier of fact interpreting all of the evidence in this manner could have found the essential elements of the crime beyond a reasonable doubt.
Id. at 1309-10. (Emphasis in the original.) (Footnotes omitted.)
The standard for appellate review is then summarized in Mussall, supra, as follows:
[A] reviewing court may not disregard its duty under due process of law ... simply because the record contains testimony which tends to support each fact necessary to constitute the crime. If the court finds that no rational trier of fact viewing all of the evidence from a rational pro-prosecution standpoint could have found guilt beyond a reasonable doubt, the conviction cannot stand constitutionally.
Id. at 1311.
Additionally, the Louisiana Supreme Court has expanded the Jackson rule to cover criminal cases where the identity of the perpetrator of the crime is at issue. Under those circumstances, the State cannot meet its burden of proof unless it negates every “reasonable probability of mis-identification.” State v. Brady, 414 so.2d 364, 365 (La.1982).
After reviewing of the evidence detailed above, I am convinced that the State has failed to meet its burden of negating every reasonable probability that the defendant in the instant case was misidentified by the police officers. Although the testimony of the police officers standing alone might have been sufficient to establish all the elements of the crime for which Massey was charged, the defense presented overwhelming evidence that contradicted the State’s evidence. Thus, I would hold that even a rational, pro-prosecution trier of fact would have had reasonable doubts that *747 the defendant was guilty of the crime for which he was charged.
In the instant case, the defense presented a confession made under oath by a third party. When a third party confesses to a crime under oath and thereby subjects himself to possible criminal charges, that confession should be considered seriously and given great weight in the absence of evidence which indicates that the confession itself is unreliable. Certainly I am not insensitive to the fact that confessions can be fabricated; however, in the instant case there is no evidence to indicate that Knight’s confession was prompted by any circumstances other than his unwillingness to allow another person to go to jail for a crime which he committed. The question to be considered is whether the circumstances indicate that the confession is trustworthy and courts should consider judicial confessions trustworthy in the absence of evidence to the contrary. Here, certainly no evidence exists to indicate that Knight’s confession was not trustworthy; in fact just the opposite is true — much evidence exists to support the trustworthiness of the confession. First, Knight’s confession occurred after the trial judge questioned him thoroughly concerning whether the confession was knowing and voluntary and after the trial judge insisted that Knight consult an attorney. Additionally, Knight’s confession is completely corroborated by the testimony of the defendant and by the unimpeachable testimony of two independent eyewitnesses. Under those circumstances, the trial judge should not be allowed to ignore the reasonable doubt which must be created in the mind of a rational fact-finder concerning the defendant’s guilt. Thus, I would reverse the conviction.